FILED

2013 Nov-07 PM 08:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN CHEMICALS & | ) | |
| EQUIPMENT, INC. 401(K) | ) | |
| RETIREMENT PLAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Number |
| | ) | 2:13-cv-01601-AKK |
| **vs.** | ) | |
| | ) | Motion is Opposed |
| PRINCIPAL MANAGEMENT | ) | |
| CORPORATION and PRINCIPAL | ) | |
| GLOBAL INVESTORS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' <u>MOTION TO DISMISS</u>

## **<u>TABLE OF CONTENTS</u>**

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Plaintiff Did Not Copy the *Curran* Complaint. . . . . . . . . . . . . . . . . . . . . . 1

III.  Defendants Ignore the Allegations of Plaintiff's Complaint. . . . . . . . . . . . 3

IV.  Plaintiff Has Article III Standing to Bring the Claims at Bar. . . . . . . . . . . 6

V.  Plaintiff's Allegations State a Claim Under § 36(b). . . . . . . . . . . . . . . . . . 8

    A.  The Standard of Liability Under § 36(b). . . . . . . . . . . . . . . . . . . . . . . 8

    B.  The *Gartenberg* Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.  The Nature and Quality of Services. . . . . . . . . . . . . . . . . . . . . . 10

        2.  Comparative Fee Structures. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.  Profitability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.  Economies of Scale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        5.  Approval by Independent Directors. . . . . . . . . . . . . . . . . . . . . . 13

        6.  Fallout Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.  Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                           **Page**

*Bausch v. Stryker Corp.*,
   630 F.3d 546 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Curran v. Principal Mgmt. Corp.*,
   No. 09-cv-00433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011). . . . . . . . . . 3

*Davis v. Univ. of Montevallo*,
   586 So.2d 27 (Ala. Civ. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dumond v. Massachusetts Fin. Servs. Co.*,
   No. 04-11458-GAO, 2006 WL 149038 (D. Mass. Jan. 19, 2006) . . . . . . . . 9

*Gallus v. Ameriprise Fin., Inc.*,
   561 F.3d 816 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hunt v. Invesco Funds Group, Inc.*,
   No. 04-2555, 2006 WL 1581846 (S.D. Tex. June 5, 2006) . . . . . . . . . . . . 9

*In re American Mutual Funds Fee Litig.*,
   No. CV 04-5593, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005). . . . . . . 7, 14

*In re Federated Mut. Funds Excessive Fee Litig.*,
   No. 04cv352, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009). . . . . . . . . . . . 9

*In re Goldman Sachs Mut. Funds Fee Litig.*,
   No. 04-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) . . . . . . . . . . 8, 13

*In re Mut. Funds Inv. Litig.*,
   519 F. Supp. 2d 580 (D. Md. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Jones v. Harris,*
    559 U.S. 335 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Krantz v. Fidelity Mgmt. & Research Co.,*
    98 F. Supp.  2d 150 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 14

*Migdal v. Rowe Price-Fleming Int'l, Inc.,*
    248 F.3d 321 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Stegall v. Ladner,*
    394 F. Supp. 2d 358 (D. Mass. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Strigliabotti v. Franklin Resources, Inc.,*
    No. 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) . . . . . . . . . . . 10

*Wicks v. Putnam Inv. Mgmt., LLC,*
    No. 04-10988, 2005 WL 705360 (D. Mass. March 28, 2005) . . . . . . . . . . 9

*Williams v. Bank One Corp.,*
    No. 03 C 85621, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003).. . . . . . . . . . 7

## Statutes

15 U.S.C. § 80a-2 (36) (1940).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.    Introduction

Tellingly, Defendants in their Motion do not contest on the merits Plaintiff's allegation that Defendants' mutual fund fees violate § 36(b). Nor do Defendants contest the truth of any of Plaintiff's core allegations. Rather, Defendants argue that Plaintiff may not pursue the instant claims because Plaintiff lacks standing to do so and because Plaintiff's Complaint fails otherwise to allege sufficient facts. Defendants' arguments fail. They turn fundamentally on severe mischaracterizations of Plaintiff's Complaint and controlling law. At most, Defendants raise a number of contested factual issues – and that itself warrants denial of their Motion.

## II.    Plaintiff Did Not Copy the *Curran* Complaint

Defendants assert that Plaintiff copied the complaint in *Curran v. Principal Mgmt. Corp.* No.4:09-cv-00433 RP (S.D. Iowa). Defendants further assert that because the *Curran* Court dismissed **some** of the claims in the *Curran* complaint, this Court should dismiss Plaintiff's **entire** complaint.[1] To be sure, the two complaints share some similarities. Both complaints allege that Defendants impose unlawful and excessive fee charges in violation of § 36(b). But, as explained below, this is where the material similarities between these two cases end.

When Plaintiff here suspected that the Principal Funds may have been charged excessive fees by Defendants, Plaintiff did not simply copy the *Curran* complaint and

---

[1] *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Motion") at 7.

1

hope for the best. Rather, Plaintiff before filing undertook independent, extensive and expensive due diligence concerning the fees at issue in this matter. To that end, among other things, Plaintiff retained renowned financial services expert Steve Pomerantz, Ph.D., to analyze the fees paid by the Principal Funds. Pomerantz has over twenty years of experience providing sophisticated expert witness services; notably, he also served as the plaintiffs' expert in *Curran*.[2] *Curran* recently settled, and the parties in that case agreed to dismiss those claims with prejudice.[3] After being retained by Plaintiff here, Pomerantz worked for over a month analyzing the fees charged to the Principal Funds.[4] Thereafter, he independently confirmed to Plaintiff that the portion of the Acquired Fund Fee that Defendants receive from the Principal Funds ($80 million in 2012) is so disproportionately large that it bears no reasonable relationship to the services rendered in exchange for the fee and could not have been a product of arm's length bargaining. *See Jones v. Harris,* 559 U.S. 335 (2010).

Pomerantz thereafter assisted Plaintiff in crafting what is now the Complaint

[2] Steve Pomerantz's Curriculum Vitae is available at http://www.stevepomerantz.com (last visited November 6, 2013).

[3] *Curran* settled on May 17, 2013, shortly after expert reports were exchanged. *See Curran,* No.4:09-cv-00433 RP (S.D. Iowa) ("TEXT ONLY ORDER for Closing Documents: The Court was advised by counsel that this case has been settled.") (Docket #164).

[4] Plaintiff's Complaint refers to the mutual funds at issue here as the "Principal Funds." Defendants' Motion refers to the mutual funds as the "LifeTime Funds." In order to avoid confusion, Plaintiff refers to the mutual funds at issue with the definition used in the operative Complaint: "Principal Funds."

in this case.[5] In significant part because of Pomerantz's assistance, Plaintiff did not repeat the pleading mistake that the *Curran* plaintiffs made. In *Curran*, plaintiffs brought claims on behalf of Defendants' "Strategic Asset Management Fund" ("SAM")[6] seeking recovery of not just the fees taken by the Defendants, but also the fees taken by the sub-advisors to the underlying funds in the SAM Fund. The *Curran* order dismissing some of the claims in that case is limited: it holds only that plaintiffs in that case "are not entitled to bring claims regarding the fees charged by [sub-advisors] to the Underlying Funds."[7] Here, the *Curran* holding is of no moment because Plaintiff's Complaint intentionally does not make a *Curran*-type claim for recovery of the fees charged by the sub-advisors to the underlying funds of the Principal Funds.

## III.   Defendants Ignore the Allegations of Plaintiff's Complaint

Defendants fail to challenge critical and plain allegations of the instant Complaint. To wit, Plaintiff alleges that Defendants "in the first instance pocket the

---

[5] By way of example, Pomerantz prepared the table in Paragraph 20 of the Complaint. The table illustrates that Defendants pocketed nearly $80 million in Acquired Fund Fees from the Principal Funds in 2012. Pomerantz will corroborate these allegations under oath in due course at his expert witness deposition in this matter.

[6] The SAM Fund is an entirely separate and distinct mutual fund relative to the Principal Funds. There are many differences between the SAM Fund and the Principal Funds, but perhaps most important for present purposes, the SAM Fund employs different fee assessment methodologies than the Principal Funds.

[7] *Curran v. Principal Mgmt. Corp.*, No. 09-cv-00433, 2011 WL 223872 *4 (S.D. Iowa Jan. 24, 2011).

entire Acquired Fund Fee ($120 million) . . . retain a portion of the Acquired Fund Fee ($80 million) and then pass down the remainder of the Acquired Fund Fee ($40 million) to the various sub-advisors to the Principal Funds."[8] Plaintiff further alleges that the portion of the "Acquired Fund Fee retained by Defendants ($80 million) is grossly excessive and a clear breach of Defendants' statutory and fiduciary duties."[9] And Plaintiff seeks to recover only the portion of the Acquired Fund Fee retained by Defendants.[10]

In response to these allegations, Defendants argue that Plaintiff "lacks standing to pursue its claims because it is not challenging the fees that Defendants earn for providing services to the [Principal Funds], but instead challenges the fees that Defendants earn for providing services to the underlying funds."[11] This argument completely misses the mark. Plaintiff has made no allegations with respect to services that the Defendants provide to the underlying funds. ***Defendants are attacking allegations that do not exist***. As such, the Motion is a non sequitur writ large.

While it would be completely inconsistent and factually at odds with the Complaint's allegations, if Defendants' argument is that the flow of fee-related

---

[8] Complaint, ¶¶ 15-16.

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶ 16 ("Defendants simply 'pad' the Acquired Fund Fee with unreasonably lucrative profit margin for Defendants and use it as a pretext to transfer wealth of the Principal funds to Defendants for their own benefit and to the detriment of the Principal Funds.").

[11] Motion at 6.

money in the Principal Funds is not as alleged by Plaintiff in the Complaint – namely, that Defendants in the first instance pocket the entire Acquired Fund Fee, retain a portion of the Acquired Fund Fee, and then pass down the remainder of the Acquired Fund Fee to the various sub-advisors to the Principal Funds – but, rather, that the entire Acquired Fund Fee ($120 million) is instead initially pocketed by the sub-advisors to the Principal Funds, and then the sub-advisors kick back $80 million of that money to Defendants, then it appears that Defendants are admitting to having participated in an unlawful kickback scheme that would still violate § 36(b) and very likely other federal and state laws as well. In any event, this argument by Defendants is not an appropriate basis for dismissal because it turns on numerous disputed questions of fact that may not be properly resolved on a motion to dismiss.

That aside, as Defendants note in their Motion, the term "security holder" is not defined in the ICA.[12] The ICA does, however, define the term "security." According to that definition:

> ***"Security" means*** any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, ***or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the***

---

[12] Motion at 5.

> *value thereof)*, or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 80a–2 (36)(1940) (emphasis added).

To the extent the Court is inclined to embrace what Plaintiff respectfully submits is a deeply erroneous misreading of the Complaint and then apply a *Curran*-type standing analysis here, Defendants' Motion should still be denied. For here, whether or not Plaintiff's ownership interest in the Principal Funds endows Plaintiff with privileges with respect to what Defendants call the "underlying funds" owned by the Principal Funds and/or gives Plaintiff an interest in them based on the value thereof (in the words of the ICA) fundamentally are questions of fact not appropriately resolved incident to a motion to dismiss. *See, e.g., Davis v. Univ. of Montevallo*, 586 So.2d 27, 29 (Ala. Civ. App. 1991) (reversing grant of motion to dismiss because "[w]e are unable to determine from the record whether such a property interest was created by the alleged contract with Montevallo").

## IV.   Plaintiff Has Article III Standing to Bring the Claims at Bar

Plaintiff is a shareholder of the Principal Funds.[13] It is well settled that a shareholder of a mutual fund has Article III standing to sue on behalf of the fund it

---

[13] Complaint ¶ 28.

owns. *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d 580, 587-89 (D. Md. 2007). What a plaintiff may ***not*** do is sue on behalf of a separate mutual fund. That is not, however, what Plaintiff has done here, Defendants' miscasting of Plaintiffs' allegations to that effect notwithstanding. Plaintiff is suing on behalf of the Principal Funds ***and is seeking to recover money paid by the Principal Funds***.[14] Defendants' standing argument turns entirely on the false premise that Plaintiff is suing on behalf of funds it does not own. As such, Defendants are misconstruing the fundamental nature of Plaintiff's allegations, and denial of their Motion is warranted for that reason, too.

In further support of their argument that Plaintiff lacks standing, Defendants cite the following cases in which courts have held that plaintiffs lacked the requisite standing to bring a § 36(b) claim against a mutual fund because the plaintiff did not own shares in the particular mutual funds: *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 588-590, *In re American Mutual Funds Fee Litig.*, No. CV 04-5593, 2005 WL 3989803, at *1 (C.D. Cal. Dec. 16, 2005), *Stegall v. Ladner*, 394 F. Supp. 2d 358, 362 (D. Mass. 2005), and *Williams v. Bank One Corp.*, No. 03 C 85621, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003). These cases all are inapposite; in each, the plaintiffs owned shares in some mutual funds within a family of funds issued by a single investment company, but did not own any interest in other funds in the family

---

[14] Complaint ¶¶ 13-14.

of funds. In each case, the reviewing court determined that the plaintiffs did not have standing to pursue their action on behalf of the entire family of funds. Here, however, there is no dispute that Plaintiff holds shares in the entire family of Principal Funds at issue.

## V.    Plaintiff's Allegations Properly State a Claim Under § 36(b)

### A.    The Standard of Liability Under § 36(b)

An investment advisor violates § 36(b) if it charges a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered in exchange for the fee and could not have been a product of arm's length bargaining. *Jones,* 559 U.S. at 335 (2010). The test for a § 36(b) violation anticipates consideration of the following non-exclusive *Garternberg* factors: (1) the nature and quality of the services provided; (2) comparative fees; (3) economies of scale; (4) fallout benefits (*i.e.*, indirect profits to the adviser attributable in some way to the existence of the fund); (5) the profitability of the adviser in providing services to the fund; and (6) the independence and conscientiousness of the directors. *Id.* A plaintiff "need not make a conclusive showing of each of the *Gartenberg* factors but, instead, may state a § 36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee." *In re Goldman Sachs Mut. Funds Fee Litig.,* No. 04-2567, 2006 WL

8

126772, at *9 (S.D.N.Y. Jan. 17, 2006) (a motion to dismiss "do[es] not require us to assess whether all six factors have been met"); *Wicks v. Putnam Inv. Mgmt., LLC*, No. 04-10988, 2005 WL 705360, at *4 (D. Mass. March 28, 2005) ("A plaintiff's failure to plead certain *Gartenberg* factors is not itself grounds for dismissal"); *Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150 (D. Mass. 2000) (denying motion to dismiss § 36(b) claim where plaintiff alleged facts concerning only four of the six *Gartenberg* factors).

Defendants improperly claim that Plaintiff's Complaint is a general indictment of the mutual fund industry. While Plaintiff does supply some background information regarding the mutual fund industry to provide context for the Complaint, Plaintiff's Complaint is grounded in sufficient facts specific to Defendants to "raise a reasonable expectation that discovery will reveal evidence of the [excessiveness of the fees charged by Defendants.]" *In re Federated Mut. Funds Excessive Fee Litig.*, No. 04cv352, 2009 WL 5821045 at *1 (W.D. Pa. Sept. 30, 2009)(citations omitted). In short, Plaintiff's Complaint more than passes muster under *Gartenberg*. To wit, a number of courts have upheld Section 36(b) claims based upon similar facts to those set forth in Plaintiff's Complaint. *See, e.g., Federated*, 2009 WL 5821045 at *8 (denying motion to dismiss Section 36(b) claim founded on similar allegations); *Hunt v. Invesco Funds Group, Inc.*, No. 04-2555, 2006 WL 1581846 (S.D. Tex. June 5, 2006) (same); *Dumond v. Massachusetts Fin. Servs. Co.*, No. 04-11458-GAO, 2006

WL 149038 (D. Mass. Jan. 19, 2006) (same); *Strigliabotti v. Franklin Resources, Inc.*, No. 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) (same).

Defendants fail to mention any of these cases, instead citing to cases in which the complaints had bare-bones conclusory allegations that courts appropriately rejected. *See, e.g., Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) (case dismissed as the complaint contained nothing more than "the mere recitation of boilerplate statutory language"). The critical question for the Court here is whether the Complaint alleges such facts as are necessary to provide Defendants with notice of the claims against them. Obviously the Complaint does.

### B.    The *Gartenberg* Factors

####    1.    The Nature and Quality of Services

The most costly service shareholders pay for when they invest in a mutual fund is investment advisory advice. Plaintiff alleges that the sub-advisors for the Principal Funds provide the core investment advisory services.[15] Defendants' admit this.[16] The Complaint further alleges that "in 2012 Defendants' portion of the Acquired Fund Fee amounted to approximately $80 million – ***about double that of the sub-advisors who actually provided the day-to-day investment management services for the Principal Funds.*** Defendants did little, if anything, to justify collecting $80

---

[15] Complaint ¶ 17.

[16] *Id.* ("multiple sub-advisors [ ] are responsible for the day-to-day [investment] management responsibilities of the Principal Funds.")

million in Acquired Funds Fees from the Principal Funds. The huge dollar difference between the true costs of the services rendered (paid to the sub-advisory firms) and the amount paid by the Principal Funds is simply being skimmed off and pocketed by Defendants in open breach of fiduciary duty standards requiring arms-length-type dealing and fair pricing in conflict-of-interest situations.

2.    **Comparative Fee Structures**

Defendants criticize Plaintiff's comparisons of the Principal Funds to Vanguard LifeStrategy Moderate Growth Fund because the LifeStrategy fund is not a target-date fund.[17] But this is a distinction without a difference. The important comparison, as alleged in the Complaint, is that Defendants collect fees from the Principal Funds that are more than triple what Vanguard collects from the LifeStrategy Fund. Further exacerbating the instant analytical error by Defendants, while Vanguard  actually provides daily investment advisory services to the LifeStrategy Fund, Defendants do not; sub-advisors provide the daily investment services to the Principal Funds. As each sub-advisor is a for-profit investment management company that negotiated its fee with Defendants, the fees they charge provide a meaningful benchmark for the cost of the investment advisory services provided to the Principal Funds (and one presumably including a profit margin).[18] Compared to the fees received by the

---

[17] Motion at 13.

[18] Complaint ¶ 73.

sub-advisors who actually provide substantive advisory services to the Principal Funds, the additional fees collected by Defendants and complained of by Plaintiff here – fee monies taken from the Principal Funds for little, if any, additional services provided to the Principal Funds – are excessive in violation of § 36(b).

In any event, Plaintiff in the Complaint also discusses Edge Asset Management ("Edge"), which is an affiliate of Defendants.[19]  In an arm's-length relationship, Edge would charge the Principal Funds no more than 23 basis points annually for the combined services that the Principal Funds are presently paying in excess of 100 basis points to receive. This means, as alleged in the Complaint, the entire portion of the Acquired Fund Fee that Defendants collect from the Principal Funds (*$80 million per year*) is grossly excessive.[20]

### 3.    Profitability

Defendants criticize Plaintiff for not stating Defendants' profits or "concrete" figures concerning Defendants' profitability.[21]  However, such information is considered *highly proprietary*. Absent discovery, it is impossible for Plaintiff to know Defendants' "concrete" profit margins with respect to the Principal Funds. At minimum, these are inherently fact-based questions that should appropriately be

---

[19] *Id.* at ¶¶ 52-55

[20] *Id.* at ¶ 54.

[21] Motion at 13.

resolved after discovery. Where "specific financial information is not available prior to discovery," courts have refused to dismiss Section 36(b) claims based upon the lack of information regarding this factor. *See Krantz*, 98 F. Supp. 2d at 159*; see also, Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

### 4.    Economies of Scale

Section 36(b) was enacted "in large part because Congress recognized that as mutual funds grew larger, it became less expensive for investment advisers to provide the additional services. Congress wanted to ensure that investment advisers passed on to fund investors the savings that they realized from those economies of scale." *Migdal*, 248 F.3d at 326-7.

Plaintiff has specifically alleged that economies of scale have not been shared with Principal Fund shareholders.[22] The facts contained in Plaintiff's Complaint go well beyond what courts have found sufficient to survive a motion to dismiss in § 36(b) cases. For example, as recognized in a case Defendants cite, *In re Goldman Sachs Mutual Funds Fee Litig.*, the court acknowledged plaintiffs there met the pleading standard by alleging the investment advisors' fees had increased significantly over time while the quality of services rendered had not changed.

### 5.    Approval by Independent Directors

Plaintiff alleges that Defendants have failed to provide the directors of the

---

[22] *Id.* at ¶¶ 64-69.

Principal Funds with sufficient, complete, and/or accurate information and may have, in fact, made misleading representations to the directors regarding (1) the services Defendants provide and advisory fees they charges its other clients, (2) economies of scale, and (3) Defendants' profitability. Plaintiff has also alleges that the directors of the Principal Funds rarely, if ever, question any information or recommendations provided by Defendants. The foregoing clearly indicates a lack of independence and conscientiousness on the part of the directors of the Principal Funds, a lack of arm's-length negotiations and/or a deficient fee-approval process.[23]

Plaintiff lacks specific information as to the exact fee-setting process because that information is solely within the possession and control of Defendants. But this does not mandate dismissal of Plaintiff's Complaint. *See Bausch v. Stryker Corp.,* 630 F.3d 546, 561 (7th Cir. 2010); *Braden*, 588 F.3d at 598; *Krantz*, 98 F. Supp. 2d at 159. And for good reason. In *Gallus*, for example, only after discovery did the plaintiffs learn that the defendant had provided inaccurate and misleading materials to the fund directors in question. *Gallus v. Ameriprise Fin., Inc.*, 561 F.3d 816, 824 (8th Cir. 2009). Likewise, in *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 WL 5215755, at *55 (C.D. Cal. Dec. 28, 2009), only after discovery were plaintiffs able to develop evidence that the directors "did not diligently inquire into some issues of importance and failed to recognize the consequences of some of the information

---

[23] Complaint ¶¶ 82-91.

14

presented to them." Regardless of what Plaintiff may not have alleged, the facts that it **has** alleged, based on the necessarily limited information available to it, are more than sufficient to survive a motion to dismiss.

### 6.    Fallout Benefits

Plaintiff's Complaint makes allegations specific to Defendants' receipt of fallout benefits. For purposes of deciding this Motion, these allegations must be taken as true. *Braden*, 588 F.3d at 594. Plaintiff alleges that fall-out benefits benefit Defendants and result in increased costs to the Principal Funds' with no corresponding benefits. Defendants here again criticize Plaintiff for not having more specific information. Once more, this type of information is not publicly available and, therefore, cannot be known with any more specificity without discovery. *See Braden,* 588 F.3d at 598. Finally, this one factor should not be parsed out separately but, rather, should be considered within the context of the other allegations in Plaintiffs' Complaint. *Id.* at 594.

## VI.    Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendants' Motion.

Dated: November 7, 2013

/s/ Michael C. McKay
Garrett W. Wotkyns
Michael C. McKay

15

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0141
Facsimile: (866) 505-8036

Richard S. Frankowski
BURKE HARVEY &
FRANKOWSKI, LLC
One Highland Place
2151 Highland Avenue, Suite 120
Birmingham, Alabama 35205
Telephone: (205) 588-8671
Facsimile: (205) 930-9054

Joseph C. Peiffer
Daniel J. Carr
FISHMAN HAYGOOD PHELPS
WALMSLEY WILLIS &SWANSON
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

Peter J. Mougey
James L. Kauffman
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7121
Facsimile: (850) 436-6147

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2013, a copy of Plaintiff's Response to Defendants' Motion to Dismiss was filed electronically. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Undersigned counsel further certifies that, on this date, the above filing was sent by regular U.S. Mail, postage prepaid, and electronic mail to all counsel registered with the Court to receive electronic filings.

/s/ Michael C. McKay
*Attorney for Plaintiff*